UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SEONGNAM LEE,

             Petitioner,

    v.

WARDEN, Buffalo Federal Detention
Facility, *et al.*,

             Respondents.

**DECISION AND ORDER**

6:26-CV-6380 EAW

---

## INTRODUCTION

*Pro se* petitioner Seongnam Lee ("Petitioner"), a civil immigration detainee currently held at the Buffalo Federal Detention Facility in Batavia, New York, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Dkt. 1). Petitioner claims that his removal from the United States is not reasonably foreseeable, and therefore his continued detention without a bond hearing violates his Fifth Amendment liberty interest. (*Id.* at ¶¶ 9-13). Petitioner also filed motion for a temporary restraining order ("TRO") seeking release from custody or a bond hearing. (Dkt. 2). Respondents have moved to dismiss the petition as premature. (Dkt. 5). Petitioner filed a reply. (Dkt. 8). For the reasons set forth below, the Court grants Respondents' motion to dismiss (Dkt. 5), dismisses the petition (Dkt. 1) without prejudice, and denies the motion for a TRO (Dkt. 2) as moot.

## BACKGROUND

Petitioner is a citizen and national of South Korea. (Dkt. 1-1 at 10; Dkt. 5-2 at ¶ 5). Petitioner was admitted to the United States on March 3, 2012, as a nonimmigrant visitor

- 1 -

under the Visa Waiver Program or VWP.[1]  (Dkt. 5-2 at ¶ 5, Dkt. 5-3 at 1, 10).  Petitioner remained in the United States without authorization beyond his May 31, 2012 deadline to leave.  (Dkt. 5-2 at ¶ 5, Dkt. 5-3 at 10-12).

On May 7, 2018, Petitioner filed a Form I-589 Application for Asylum and for Withholding of Removal with the United States Citizenship & Immigration Services ("USCIS").  (Dkt. 5-2 at ¶ 6, Dkt. 5-3 at 2).  On July 2, 2018, USCIS informed Petitioner that it lacked jurisdiction over his Form I-589 and referred him to the Executive Office for Immigration Review ("EOIR") for asylum-only proceedings.[2]  (Dkt. 5-2 at ¶ 7, Dkt. 5-3 at 3-6).

Petitioner and the Department of Homeland Security ("DHS") filed a joint motion to dismiss the asylum-only proceedings.  An immigration judge ("IJ") with the EOIR granted the motion.  (Dkt. 5-2 at ¶ 8, Dkt. 5-3 at 7-8).  The IJ's order stated that Petitioner agreed to withdraw, without prejudice, his applications for asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and protection under the Convention Against Torture.  (*Id.*).

---

[1]  Under the VWP, "aliens from certain countries . . . may visit the United States for 90 days or less without a visa."  *Kanacevic v. I.N.S.*, 448 F.3d 129, 133 (2d Cir. 2006) (citing 8 U.S.C. § 1187(a) (2000 and Supp. II 2002); 8 C.F.R. § 217.2 (2006)).

[2]  Noncitizens admitted under the VWP "forfeit any right to challenge their removal, except that they may apply for asylum."  *Kanacevic*, 448 F.3d at 133 (citing 8 U.S.C. § 1187(b); 8 C.F.R. § 217.4(a) (2006); *Wigglesworth v. I.N.S.*, 319 F.3d 951, 956 (7th Cir. 2003); *Itaeva v. I.N.S.*, 314 F.3d 1238, 1239 (10th Cir. 2003)).  "Therefore, [VWP] participants who do apply for asylum are processed in 'asylum-only' proceedings."  *Id.* (citing 8 C.F.R. § 208.2(c)(iii) (2006)).

On January 27, 2026, Petitioner was arrested by local law enforcement in the Town of Amherst and charged with misdemeanor driving while intoxicated under New York Vehicle & Traffic Law § 1192.  (Dkt. 5-2 at ¶ 9).

On February 24, 2026, United States Immigrations and Customs Enforcement ("ICE") arrested Petitioner, served him with a Visa Waiver Program Notice of Intent to Issue a Final Administrative Removal Order ("VWP Notice of Intent"), and detained him at the Buffalo Federal Detention Facility.  (Dkt. 5-2 at ¶ 10; Dkt. 5-3 at 9-12)).

ICE issued a Visa Waiver Program Final Administrative Removal Order ("VWP FARO")[3] on March 3, 2026, and served it on Petitioner that day.  (Dkt. 5-2 at ¶ 11; Dkt. 5-3 at 13).

On March 28, 2026, Petitioner filed the instant § 2241 petition.

## DISCUSSION

### I.    Jurisdiction

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484

---

[3]    "Unless granted relief in . . . [asylum-only] proceedings, the Visa Waiver [Program] applicant can be removed without further proceedings." *Kanacevic*, 448 F.3d at 133 (citing 8 C.F.R. § 217.4(a)(1) (2006)).

(1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).

In the immigration context, "recent Second Circuit precedent firmly establishes that [a district] [c]ourt can hear and decide Section 2241 habeas petitions brought by individuals in immigration detention, so long as the petitions challenge the constitutionality of the petitioners' detention rather than the underlying removal proceedings."  *L.G.M. v. LaRocco*, 788 F. Supp. 3d 401, 404 (E.D.N.Y. 2025) (quoting *Ozturk v. Hyde*, 136 F.4th 382, 399-400 (2d Cir. 2025) (finding petitioner's First and Fifth Amendment challenges to her detention distinct from challenges to her removal proceedings and therefore properly within the district court's jurisdiction (collecting cases); *Mahdawi v. Trump*, 136 F.4th 443, 452 (2d Cir. 2025) (same)).

Petitioner's § 2241 petition challenges only the constitutionality of his continued detention in the Government's custody.  In fact, Petitioner has voluntarily dismissed his asylum claim, the sole basis on which he could have challenged his removal.  Therefore, the Court has subject matter jurisdiction over this matter.

## II.    Due Process Claim

Petitioner contends that his ongoing detention without a bond hearing or release under conditions of supervision violates his due process rights under the Fifth Amendment. Before addressing this claim, the Court must determine the statutory basis for Petitioner's detention.

### A. Petitioner Is Not Detained Pursuant to Section 1187(c)(2)(E)

Respondents assert that "VWP aliens are subject to detention pursuant to 8 U.S.C. § 1187(c)(2)(E), as opposed to 8 U.S.C. §§ 1225 or 1226." (Dkt. 5-1 at 3 (citing *Matter of A-W-*, 25 I. &N. Dec. 45 (BIA 2009))). According to Respondents, Petitioner is presently "subject to detention without a bond hearing under 8 U.S.C. § 1187(c)(2)(E) because he has a final order of removal under the Visa Waiver Program." (Dkt. 5-1 at 4).

Respondents rely solely on *Matter of A-W-*, in which the Bureau of Immigration Appeals ("BIA") ruled that VWP aliens are not subject to detention under § 1226, but are instead detained pursuant to 8 U.S.C. § 1187(c)(2)(E). 25 I. & N. Dec. at 47-48. Section 1187(c)(2)(E) provides in full as follows:

> (c) Designation of [Visa Waiver] program countries
> . . .
> (2) Qualifications
> Except as provided in subsection (f), a country may not be designated as a program country unless the following requirements are met:
> . . .
> (E) The government of the country accepts for repatriation any citizen, former citizen, or national of the country against whom a final executable order of removal is issued not later than three weeks after the issuance of the final order of removal. Nothing in this subparagraph creates any duty for the United States or any right for any alien with respect to removal or release. Nothing in this subparagraph gives rise to any cause of action or claim under this paragraph or any other law against any official of the United States or of any State to compel the release, removal, or consideration for release or removal of any alien.
> . . . .

8 U.S.C. § 1187(c)(2)(E).

District courts have noted that the BIA's ruling in *Matter of A-W-* was made "[w]ithout detailed explanation" and "merely by noting that the authority to grant bond to aliens 'detained' pursuant to § 1187 no longer belonged to the Attorney General, and thus had not been delegated to the immigration judges who derived their authority from a delegation from the Attorney General." *Gjergj G. v. Edwards*, No. 19-5059, 2019 WL 1254561, at *2 (D.N.J. Mar. 18, 2019). "The text of § 1187(c)(2)(E) says nothing about DHS's [or ICE's] authority to arrest and detain a person who has overstayed under the [Visa Waiver Program]." *Molina v. Soto*, No. 25CV16880 (EP), 2025 WL 3281820, at *3 (D.N.J. Nov. 25, 2025).

As another district court has noted, "[p]erhaps the biggest roadblock to the government's claim that § 1187(c)(2)(E) provides detention authority is the code section's failure to mention detention at all." *Malets v. Horton*, No. 420CV01041-MHH-SGC, 2021 WL 11549981, at *2 n.7 (N.D. Ala. Jan. 11, 2021), *adopted*, 2021 WL 4197594 (N.D. Ala. Sept. 15, 2021). Instead, § 1187 merely lists the requirements for countries seeking to be designated as eligible under the statute and for noncitizens applying to participate in the program. *Id.*

Thus, "most federal courts that have directly addressed whether a noncitizen who has violated the Visa Waiver Program can be detained pursuant to § 1187(c)(2)(E) have held that § 1187(c)(2)(E) is not a valid basis for detention." *Quispe v. Becerra*, No. 1:25-CV-2002 CSK, 2025 WL 3774570, at *4-5 (E.D. Cal. Dec. 31, 2025) (citing *Molina*, 2025 WL 3281820, at *2-3 (finding that habeas petitioner, a VWP noncitizen who was challenging the validity of his removal order, was unlawfully detained under 8 U.S.C.

§ 1225(b) but could be detained under § 1226(a) subject to a bond hearing; granting petition and directing respondents to provide petitioner with a bond hearing); *Romance v. Warden York Cnty. Prison*, No. 3:20-cv-00760, 2020 WL 6054933, at *4 (M.D. Pa. July 28, 2020) (finding that habeas petitioner, a VWP noncitizen who was still in asylum proceedings, was detained under 8 U.S.C. § 1226(a) and entitled to a bond hearing), *adopted*, 2020 WL 6047594 (M.D. Pa. Oct. 13, 2020); *Neziri v. Johnson*, 187 F. Supp. 3d 211, 213 (D. Mass. 2016) ("The BIA offers no explanation, however, as to why the Secretary of Homeland Security cannot delegate any [bond-setting] authority to the Immigration Judge under 8 U.S.C. § 1226(a) or where in 8 U.S.C. § 1187(c)(2)(E) the BIA finds the Secretary of Homeland Security's authority to detain aliens.")).

This Court agrees with courts concluding that "the VWP does not have its own detention provision, and the detention of an alien . . . must instead arise from one of the other statutory provisions expressly covering aliens subject to detention during their removal proceedings." *Quispe*, 2025 WL 3774570, at *5 (quoting *Gjergj G.*, 2019 WL 1254561, at *2; citing *Romance*, 2020 WL 6054933, at *4 (acknowledging that the petitioner's detention did not fit neatly into "any of the normal detention categories" but determining that § 1226(a) applied because otherwise there would be no applicable statutory basis for his detention and he essentially would receive a windfall for overstaying the VWP)); *see also Emila N. v. Ahrendt*, Civ. Action No. 19-5060 (SDW), 2019 WL 1123227, at *3 (D.N.J. Mar. 12, 2019) (same).

**B.      Petitioner Is Subject to a Final Removal Order and Is Detained Pursuant to Section 1231**

A better statutory fit for Petitioner's circumstances is 8 U.S.C. § 1231, which "authorizes detention 'when an alien is ordered removed' and enters the 'removal period,' which begins on '[t]he date the order of removal becomes administratively final.'" *Johnson v. Guzman Chavez*, 594 U.S. 523, 533 (2021) (alteration in original) (quoting 8 U.S.C. §§ 1231(a)(1)(A)-(B)).  Indeed, Respondents assert that Petitioner's detention "is similar to that under 8 U.S.C. § 1231." (Dkt. 5-1 at 4).  However, Respondents do not offer any explanation why Petitioner's detention is not, in fact, authorized by § 1231.

The Court finds that the VWP FARO issued to Petitioner on March 3, 2026, is effectively a final order of removal because he has no asylum application pending.  As the Second Circuit has explained, "because of the truncated rights available to a Visa Waiver Applicant, the denial of the asylum application is in effect a final order of removal because [the applicant] can be removed without further proceedings." *Kanacevic v. I.N.S.*, 448 F.3d 129, 133 (2d Cir. 2006).  The Second Circuit explained that to "elevate form over substance" and hold "that the disposition of asylum-only proceedings does not function as a final order of removal to confer jurisdiction" "would create uncertainty over exactly what procedure a Visa Waiver applicant could pursue in order to obtain review of his or her asylum proceedings in the Courts of Appeals." *Id.* at 134-35.

Other circuits similarly have concluded that a VWP FARO does not constitute a final order of removal until the VWP entrant's asylum application, if any, has been denied. *See Salomao v. Garland*, No. 20-1856, 2022 WL 1301773, at *3 (4th Cir. May 2, 2022)

("[D]enying a VWP participant's relief in an asylum-only proceeding functions like a final order of removal. . . ."); *Nicusor-Remus v. Sessions*, 902 F.3d 895, 898 (9th Cir. 2018) ("[T]he denial of an asylum application in asylum-only proceedings 'finalizes' DHS's removal order of a VWP entrant because the VWP entrant is entitled to no other forms of relief."); *Mitondo v. Mukasey*, 523 F.3d 784, 787 (7th Cir. 2008) (construing the "final disposition of an asylum-only proceeding" in VWP case as the final order of removal); *Shehu v. Att'y Gen. of U.S.*, 482 F.3d 652, 656 (3d Cir. 2007) ("We hold that a denial of a VWP applicant's petition for asylum, withholding of removal, and relief under the CAT constitutes 'a final order of removal' within the meaning of the statute, as the alien is entitled to no further process before deportation."); *Nreka v. Att'y Gen.*, 408 F.3d 1361, 1367 (11th Cir. 2005) ("The denial of an asylum application in a [VWP] proceeding is so closely tied to the removal of the alien that it can be deemed—in conjunction with the referral to the immigration judge—as a final order of removal, subject to [8 U.S.C.] § 1252(a)(1).").

As noted above, the IJ granted the joint motion to dismiss Petitioner's asylum-only proceedings. Because Petitioner's asylum-only proceedings are no longer pending, the VWP FARO in his case constitutes a final order of removal making him subject to detention under 8 U.S.C. § 1231(a)(2). *See O'Connor v. Dir., U.S. Citizenship & Immigr. Servs.*, No. SA-25-CV-00947-FB, 2025 WL 3855000, at *3 (W.D. Tex. Dec. 3, 2025) (where the IJ in the VWP entrant's asylum-only proceedings issued a final order deeming request for asylum relief to be abandoned due to failure to file a timely application, the VWP FARO was a final order of removal making her subject to detention § 1231), *adopted*

2025 WL 3852955 (W.D. Tex. Dec. 30, 2025); *see also Harding v. Schmidt*, No. 26-CV-323, 2026 WL 851240, at *1 (E.D. Wis. Mar. 27, 2026) (date on which ICE officials served a final administrative removal order on the petitioner, a VWP violator, "triggered the 90-day statutory removal period" during which the petitioner was required to be detained); *Dambrosio v. McDonald*, No. 25-CV-10782-FDS, 2025 WL 1070058, at *1-2 (D. Mass. Apr. 9, 2025) (concluding that the petitioner, who entered the United States through the VWP and overstayed the 90-day period, was detained to 8 U.S.C. § 1231(a) because a final order of removal was issued after his apprehension), *recons. denied*, 793 F. Supp. 3d 271 (D. Mass. 2025); *Neilova v. Noem*, 812 F. Supp. 3d 836, 839 (N.D. Ill. 2025) (same).

Having found that Petitioner is subject to what is effectively a final order of removal, the next question for this Court is which subsection of § 1231 governs Petitioner's detention currently. Under § 1231, there are three relevant periods. First, § 1231(2)(A) provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days" during which time "the Attorney General shall detain the alien." *Id.* "Critically, the statutory text uses 'shall,' denoting mandatory detention." *Neilova*, 812 F. Supp. 3d at 839 (citation omitted).

The 90-day removal period "begins on the latest of" three dates, only one of which is relevant in Petitioner's case—the date the order of removal becomes administratively final. 8 U.S.C. § 1231(a)(1)(B)(i). Once the 90-day mandatory detention period ends, § 1231(a)(3) provides that "[i]f the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3).

However, the Government may continue the detention of a noncitizen under certain circumstances as provided in 8 U.S.C. § 1231(a)(6):

(6) Inadmissible or criminal aliens:

An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4)[4] of this title *or* who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal,[5] *may be detained* beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6) (emphases supplied).

If the Government continues to detain the noncitizen beyond the removal period pursuant to § 1231(a)(6), such detention is "limit[ed]. . . to a period reasonably necessary to bring about that alien's removal from the United States," *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001), and is deemed "presumptively reasonable" for a period of six months, *see id.* at 701. If, after this six-month period, the noncitizen "provides good reason to believe

---

[4]    Based on the documentation submitted by Respondents, including the Notice of Referral (Dkt. 5-3 at 5), the VWP Notice of Intent (*id.* at 10), and the VWP FARO (*id.* at 13), it does not appear that Petitioner is inadmissible under section 8 U.S.C. § 1182 or removable under 8 U.S.C. §§ 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4). Rather, the Notice of Referral states that Petitioner is being referred to Immigration Court due to his status as a "VWP/Violator." (Dkt. 5-3 at 5). The VWP Notice of Intent (Dkt. 5-3 at 10) states that Petitioner is subject to removal under 8 U.S.C. § 1227(a)(1)(B), which provides that "[a]ny alien who is present in the United States in violation of this chapter or any other law of the United States, or whose nonimmigrant visa (or other documentation authorizing admission into the United States as a nonimmigrant) has been revoked under section 1201(i) of this title, is deportable." *Id.* And the VWP FARO states that the administrative record establishes by clear and convincing evidence that Petitioner "is removable" but does not cite a specific statutory provision. (*Id.* at 13).

[5]    There is no evidence before the Court suggesting that there has been any determination by the United States Attorney General that Petitioner is "a risk to the community or unlikely to comply with the order of removal," 8 U.S.C. § 1231(a)(6).

that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*.

Because Petitioner withdrew his asylum-only proceedings prior to the issuance of the VWP FARO, the VWP FARO became final on the date it was served on Petitioner— March 3, 2026.  The 90-day period began on that date and will end on Monday, June 1, 2026.  Because Petitioner is still in the 90-day removal period, his detention is mandatory pursuant to 8 U.S.C. § 1231(a)(3).  Accordingly, the Court is without authority to order that Petitioner be released to supervision or that the Government afford him a bond hearing.

If Petitioner remains in custody after the 90-day removal period ends, he may be able to assert a statutory claim that 8 U.S.C. § 1231(a)(6) does not justify his detention. *See Harding v. Schmidt*, No. 26-CV-323, 2026 WL 851240, at *1 (E.D. Wis. Mar. 27, 2026) (where Government conceded that VWP violator was not subject to detention under 8 U.S.C. § 1231(a)(6) and offered no other explanation for detaining him after the 90-day mandatory detention period, district court found that his "continued detention has been in violation of federal law explicitly requiring his release on supervision [under] 8 U.S.C. § 1231(a)(3)," that the Government "has simply not complied with the law to conduct the review required under 8 C.F.R. § 241.4," and that the proper remedy was release of petitioner subject to terms of supervision in accordance with 8 U.S.C. § 1231(a)(3)).

And if Petitioner is not removed within the presumptively reasonable six-month period, he also may be able to bring a Due Process claim under *Zadvydas*.  But the instant petition is premature because his detention is mandatory during the 90-day removal period, which terminates on June 1, 2026.  Accordingly, the Court grants Respondents' motion to

dismiss and dismisses the petition without prejudice. Because the Court is dismissing the

petition, Petitioner's motion for a TRO (Dkt. 2) is moot.

## **CONCLUSION**

For the reasons discussed above, the Court grants Respondents' motion to dismiss

the petition and dismisses the petition (Dkt. 1) without prejudice.[6] Petitioner's motion for

a TRO (Dkt. 2) is dismissed as moot.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:     May 20, 2026
           Rochester, New York

---

[6]     "A COA [certificate of appealability] is not required to appeal the dismissal of a §
2241 petition." *Franklin v. Hudson*, 579 F. App'x 50, 51 (2d Cir. 2014) (citing *Murphy v.
United States*, 199 F.3d 599, 601 n.2 (2d Cir. 1999)).